IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JAMIE MONKE,**

**Plaintiff,**

**v.**

**GENERAL MEDICINE, P.C.,**
**a corporation, et al.,**

**Defendants.**                                          No. 07-CV-198-DRH

## MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I. INTRODUCTION

On February 13, 2007, Plaintiff Jamie Monke sued her employer, General Medicine, P.C. ("General Medicine"), and seven other Defendants for claims of intentional infliction of emotional distress ("IIED") and fraud arising from her employment with General Medicine. Plaintiff filed the lawsuit in the Circuit Court of St. Clair County, Illinois. On March 21, 2007, General Medicine removed the action to this Court. (Doc. 2.) This Court has subject matter over the action because the parties are diverse and the amount in controversy exceeds $75,000. **28 U.S.C. § 1332**.

In lieu of an Answer, Defendants Thomas Prose, Marilyn Morgan, Rebecca Coccia, Patricia Gottschalk, Scott Sonsovich, Tova Shaban, and Seyburn, Kahn, Ginn, Bess and Serline, P.C. ("Seyburn, Kahn") filed individual motions to

1

dismiss for lack of personal jurisdiction or alternatively, for failure to state a claim upon which relief can be granted. (Docs. 11, 43-47.) Defendant Morgan filed an amended motion to dismiss. (Doc. 48.) Plaintiff did not object to Morgan filing an amended motion; therefore, the Court will withdraw Morgan's original motion to dismiss (Doc. 43) and consider only her amended motion (Doc. 48.) Plaintiff filed her opposing Responses (Docs. 58-63) to which Defendants filed their replies. (Docs. 72-77.) Although each of the Defendants separately filed motions to dismiss (except for Seyburn, Kahn and Tova Shaban who joined together in a motion to dismiss), the Court will consider the motions together for the purpose of general analysis, and then take up any specific facts or arguments that may weigh in on an individual motion to dismiss.

## II. **BACKGROUND**

According to Plaintiff's Complaint (Doc. 3-2), Plaintiff Jamie Monke was employed as a medical doctor by Defendant General Medicine from October 1, 2004 until February 25, 2005. During her employment with General Medicine, Plaintiff provided medical services to General Medicine's clients at several nursing home facilities across the state of Illinois.

Plaintiff claims that General Medicine, and by incorporation all of the other named Defendants, forced Plaintiff to work an immense workload and failed to recruit a second physician to assist Plaintiff with her duties. Plaintiff alleges that she advised her supervisors of the exhaustion, sleep depravation, and stress she endured due to the workload. Despite this, Plaintiff contends that Defendants took

several actions which were intended and/or were substantially certain to cause Plaintiff emotional distress. Among other allegations, these actions included: threatening to report Plaintiff to the Medical Board while Defendant General Medicine's lawyer was on a three-way call with Plaintiff and Co-Defendant Dr. Prose; threatening to have Plaintiff's medical license revoked if she resigned from General Medicine; ordering Plaintiff to falsify records by coding 5 minute appointments instead of 30 minutes; being on call for 450 hours straight without a break; and being on call for nursing homes over 300 miles away on weekend and holidays. (Doc. 3-2, Count I, ¶ 11.) Plaintiff maintains that this Defendants' conduct was extreme and outrageous and caused Plaintiff to suffer and continue to suffer mental anguish, depression, anxiety, panic, fear, worry, and loss of sleep. Due to these conditions, Plaintiff alleges that she has incurred extensive hospital, medical, and related expenses. In addition, Plaintiff insists that defendant, individually, and "by and through its agents, servants, and employees, was guilty of one or more of the following fraudulent acts or omissions: a) Fraudulently misrepresented to plaintiff that she would be assigned to 6 nursing homes; b) Fraudulently misrepresented to Plaintiff and the would be on call for only 12 nursing homes; c) Fraudulently misrepresented to plaintiff by failing to inform her she would be on call for 32 additional nursing homes in the Chicago/Rockford areas; and d) Fraudulently misrepresented to plaintiff, in October 2004, that another physician would be recruited to adjust the workload." (Doc. 3-2, Count VIII, ¶ 9.)

Other than a three-way telephone call that took place between Plaintiff,

3

Thomas Prose, and Tova Shaban (counsel for General Medicine), Plaintiff's Complaint only makes general allegations and does not specify the extent of each Defendants involvement with each allegation.

### III. MOTIONS TO DISMISS

#### A. Motions to Dismiss for Lack of Personal Jurisdiction

##### 1. Legal Standard

Defendants first seek a dismissal of Plaintiff's suit upon the basis that this Court lacks personal jurisdiction over Defendants. Once a defendant moves to dismiss pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)**, a plaintiff has the burden of establishing the existence of personal jurisdiction over an out-of-state defendant. ***Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (internal citations omitted)**. A plaintiff must provide sufficient evidence to establish at least a *prima facie* case of personal jurisdiction. ***Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987)**.

A federal court sitting in diversity must rely on the law of personal jurisdiction that governs the courts of general jurisdiction in the state where the court is sitting. ***Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)**. Because this Court sits in Illinois and further, because this action is a diversity case, the Court will have personal jurisdiction over non-resident Defendants only if an Illinois court would have personal jurisdiction. ***FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 (7th Cir. 1990)(citing FED. R. CIV. P. 4(e))**. The Illinois long-arm statute, **735 ILL.**

COMP. STAT. 5/2-209, lists the statutory grounds for which personal jurisdiction over a defendant may be exercised by an Illinois court. Personal jurisdiction can be either "general," as stated in **735 ILL. COMP. STAT. 5/2-209(b)**, "specific," as enumerated under **735 ILL. COMP. STAT. 5/2-209(a)**, or for "any other basis permitted by the Illinois and United States Constitutions," as stated in **735 ILL. COMP. STAT. 5/2-209(c)**. Therefore, Plaintiff must demonstrate that personal jurisdiction over all Defendants in this case complies with (1) the Illinois long-arm statute, (2) Illinois constitutional law, and (3) federal constitutional law. *RAR, Inc. v. Turner Diesel, Ltd.*, **107 F.3d 1272, 1276 (7th Cir. 1997)**. Plaintiff does not suggest that the Court has general jurisdiction over any of the Defendants. Accordingly, the Court will turn its attention to whether the Defendants had sufficient "minimum contacts" with the forum state, such that maintaining an action here comports with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, **326 U.S. 310, 316 (1945)**. The defendants' conduct with respect to the forum state must be such that he would reasonably anticipate being haled into that state's court. *See World-Wide Volkswagen Corp. v. Woodson*, **444 U.S. 286 (1980)**.

To determine whether the exercise of personal jurisdiction over a defendant satisfies federal due process guarantees, a court must consider the following factors: 1) whether the defendant had sufficient "minimum contacts" with the state of Illinois such that he had "fair warning" that he might be hailed into court,

5

2) whether the lawsuit arises out of these minimum contacts, and 3) whether it is perfectly reasonable to require the defendant to litigate in this forum.  ***See Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)**.  If a defendant purposefully directed his activities toward the forum state or derived benefits from those activities, it would not be unreasonable for the court to require the defendant to litigate in that state, because the defendant has purposefully availed himself of the privilege of conducting activities in that state. ***Id.* at 476-78**.

### 2. No Jurisdiction Over Defendants Seyburn, Kahn and Tova Shaban

Defendants Seyburn, Kahn and Tova Shaban argue that Plaintiff has failed to make a *prima facie* case that the Court has personal jurisdiction over Tova Shaban or her law firm, Seyburn, Kahn.  Defendants maintain that Seyburn, Kahn is a law firm incorporated in Michigan with its sole office in Southfield, Michigan. Furthermore, they contend that Seyburn, Kahn does not have a telephone number in the State of Illinois or conduct any business within the State of Illinois.  Lastly, they maintain that Seyburn, Kahn does not have any pertinent contact with the forum state.  In addition, Defendants maintain that Shaban does not live, work, provide legal services, or transact/conduct business with the State of Illinois.  These assertions are supported by an affidavit of Tova Shaban. (Doc. 11, Ex. 1.)

The only specific reference to Shaban and her firm in the Complaint is to a three-way telephone call between Shaban, Plaintiff, and Co-Defendant Prose. In paragraph 9(a) of Count I, Plaintiff states that General Medicine "threaten[ed] to

report plaintiff to the Medical Board while defendant General Medicine's lawyer was on a three-way call with plaintiff and co-defendant Dr. Prose." Shaban maintains that this telephone call is the only direct contact she has had with Plaintiff. Shaban and her firm argue that this hardly constitutes the "minimum contacts" necessary to satisfy due process guarantees. The Court is inclined to agree.

Plaintiff argues that the Court does, in fact, have personal jurisdiction over Shaban and her firm because they "purposefully availed" themselves of the benefits of Illinois. Plaintiff cites two cases in support of her contention that one phone call is sufficient to establish minimum contacts with the forum state. In ***Ores v. Kennedy*, 218 Ill.App.3d 866 (1991)**, the court held that an attorney from Texas was subject to jurisdiction in Illinois because he had written multiple letters and made numerous phone calls to individuals in Illinois on behalf of an Illinois client over the course of nearly two years. ***Id.* at 873-74**. In addition, in ***Culligan Intern. Co. v. Wallace, Ross, & Sims*, 273 Ill.App.3d 230 (1995)**, the court held it was reasonable to exercise jurisdiction over an attorney from West Virginia who had traveled to Illinois to discuss representation, sent letters, and made phone calls to an Illinois client. While these cases are somewhat analogous to the present case, there are some salient distinctions.

First, there is a significant difference between one three-way call and multiple phone calls and letters. Plaintiff asserts that "Defendants communicated with Plaintiff on several occasions using the telephone and written correspondence"

7

but Plaintiff's complaint and her affidavit only refer to one "threatening three-way phone call from Thomas Prose, M.D., and his attorney" (Doc. 71, ¶ 6). Shaban's affidavit states, "While at my office in Southfield, Michigan, I was on the three-way telephone call with Plaintiff and Dr. Prose referenced in Count I, paragraph 9(a) of Plaintiff's Complaint. I had no direct contact with the Plaintiff other than participating in a telephone call. Except for this one phone call, I have had no dealings with Plaintiff in Illinois or anywhere else." (Doc. 11, Ex. 1, ¶ 5.) As far as the record goes, there is no concrete evidence, beyond this one contact, that Shaban or her law firm ever had any other contact with Plaintiff or the forum state.

In addition, the attorneys in ***Ores*** and ***Culligan*** represented the interests of individuals living in Illinois. The attorneys availed themselves of the benefits of conducting business with Illinois residents. The same cannot be said in this case. Plaintiff has failed to establish that Shaban and Seyburn, Kahn had sufficient minimum contacts with Illinois to satisfy due process.

Lastly, the Court wishes to note, that even if it had found that it could assert personal jurisdiction over Shaban and her firm, the intentional infliction of emotional distress and the fraud claims would most likely have been dismissed pursuant to the newly-articulated standard of **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** and the heightened pleading requirements under **Rule 9(b)**. In a recent opinion issued on May 21, 2007, the Supreme Court held that **Rule 8** requires that a complaint allege "enough facts to state a claim to relief that is plausible on its face"

8

to survive a **Rule 12(b)(6)** motion. ***Bell Atlantic Corp. v. Twombly*, \_\_\_ U.S. \_\_\_, 127 S. Ct. 1955, 1974 (2007)**. In other words, the Supreme Court explained it was "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" by providing "more than labels and conclusions," because "a formulaic recitation of the elements of a cause of action will not do . . . ." ***Id.* at 1964-65 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986))**. The Seventh Circuit has read the ***Bell Atlantic*** decision to impose "two easy-to-clear hurdles":

> First, the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.

***E.E.O.C. v. Concentra Health Services, Inc.*, 2007 WL 2215764, 2 (7th Cir. 2007) (citations omitted)**. Plaintiff has failed to clearly describe her claims against Shaban and Seyburn, Kahn in such a way as to give them fair notice of the basis on which she is asserting the IIED and fraud claims against them.

### 3. No Jurisdiction Over Defendants Prose, Morgan, Coccia, Gottschalk, and Sansovich

Defendants Prose, Morgan, Coccia, Gottschalk, and Sansovich assert, and the Court agrees, that the Court is prohibited from exercising person jurisdiction over these non-resident Defendants due to the Fiduciary Shield Doctrine. In ***Rollins v. Ellwood***, the Illinois Supreme Court recognizing the Fiduciary Shield Doctrine

9

held that "we find it to be unfair and unreasonable, under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts, to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer of principal." **141 Ill.2d 244, 280 (1990)**. *See also Rice v. Nova Biomedical Corp.*, **38 F.3d 909, 912 (7th Cir. 1995) (holding that the fiduciary shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal."** *Id.***)** The Court in *Rollins* acknowledged that exercising personal jurisdiction over an employee who acts not in his own interest, but only in the interest of his employer, satisfies *federal* due process, but does not satisfy due process under the Illinois Constitution. The fiduciary shield doctrine is one example of where federal and Illinois due process analyses part and Illinois courts impose a stricter test to satisfy due process. "The shield is withdrawn if the agent was acting also or instead on his own behalf-to 'serve his personal interests.' *Id.*

In Plaintiff's response to Defendant Gootschalk's motion to dismiss, she states, "There is no question that the cause of action stated in Plaintiff's complaint arose out of Patricia Gottschalk's contacts with Illinois in her capacity as Director of Clinical Operations." (Doc. 58, p. 8.) Plaintiff makes the exact same assertion – that the cause of action stated in her complaint arises out of the individual defendant's

10

contacts with Illinois in his or her capacity as an employee of General Monke – in each of her responses to Defendants Coccia, Morgan, Prose, and Sansovich's motions to dismiss. (Doc. 59, p. 8; Doc. 60, p. 8; Doc. 61, p. 8; Doc. 62, p. 8.) At no point does Plaintiff allege that the individual Defendants were acting not only on their employer's behalf, but also or instead on their own behalf. Accordingly, the Court must apply the fiduciary shield doctrine and dismiss the claims against each individual defendant for lack of personal jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motions to dismiss filed by Defendants Seyburn, Kahn and Tova Shaban (Doc. 11), Coccia (Doc. 44), Gottschalk (Doc. 45), Sansovich (Doc. 46), Prose (Doc. 47), and Morgan (Doc. 48). The Complaint is dismissed without prejudice with leave to amend in the event facts were omitted from the complaint which could cure the defects brought out herein. Plaintiff has 60 days to amend.

**IT IS SO ORDERED.**

Signed this 31st day of March, 2008.

/s/     *David R Herndon*
**Chief Judge**
**United States District Court**